HON. JAMES BARRETT,
HON. HOYT H. WHEELER,
HON. HOMER E. ROYCE,
HON. TIMOTHY P. REDFIELD. } ASSISTANT JUDGES.
HON. JONATHAN ROSS,
HON. H. HENRY POWERS,

---

BEARD *v.* CONNECTICUT & PASSUMPSIC RIVERS R. R. CO.

### *Railroad.*

Plaintiff was rightfully at defendant's depot in the evening, for the purpose of taking defendant's cars. There was a platform extending from the east side of the depot to the railroad track, over which passengers passed to and from the cars. Stairs led through the center of the depot to the street on the opposite side, which was several feet lower than the track ; and there were also stairs at either end of the depot, leading from the platform to the street. The stairs at the north end of the depot were open at the top, as if they might be used. These stairs, and a platform at the bottom of them about four feet from the ground, were constructed by the express company for its sole use, but they were on defendant's premises, of which defendant had control. Plaintiff, in attempting to pass down these stairs in the dark, from the upper platform to the street, without fault on her part, fell from the lower platform to the ground, striking beyond the limit of defendant's premises, and was injured. *Held*, that defendant was liable.

CASE.   Plea, the general issue, and trial by jury, December
Term, 1874, Caledonia County, Ross, J., presiding.

The plaintiff's evidence tended to show, that on the 26th
of June, 1870, she went on defendant's cars from Barnet to
Wells River, and intended to return the same afternoon on the
regular train north, but failed to reach the station at Wells River
in time to take that train ; that on inquiry, she was informed that
an extra train would go north between nine and ten o'clock that
evening, and that she could take that train if she was at the depot
at the time of its arrival ; that for that purpose she went to the
station about ten o'clock that evening, accompanied by her nephew,
about twelve years old ; that when she left the train in the morn-
ing, she passed down from the upper platform on a pair of stairs,
through the center of the depot, the track being several feet
higher than the main street of Wells River village ; that on her
return to the depot about ten o'clock, it was very dark, the depot
was unlighted, and the doors leading to the stairway through the
center of the depot were closed and fastened ; that on looking
round, she found a stairway at the south end of the depot, and
passed with her nephew up those stairs to the upper platform
near the track, and passed north on the platform, on the east side
of the depot ; that it being very dark, and there being only some
men who were perfectly civil sitting on a bench on the east side
of depot near the south end, she thought she would return to the
village and get some of her friends to come and remain with her ;
that for that purpose she sent her nephew to see if the upper door
or east-side door of depot was open, so they could pass down that
way, but he found it fastened, and that on looking round, they
found an opening in the railing at the north end of the depot, and
some stairs leading down at that end, and that she passed down
the stairs with her nephew, to a platform, and went along on the
platform, and supposed from the looks that they could step from
it to the ground, and in attempting to do so, she fell, and injured
her hip so severely as to be a cripple for life.   It appeared that
the top of this platform was some four feet above the ground, and
had been constructed, together with the stairs, by the express
company, for the sole use of said company, and that until they

were constructed the railing along the westerly edge of the upper platform extended to the north side of the depot. The express company had a shed just southerly of the platform, at the foot of these stairs, into which the team to convey the express packages was driven, and this lower platform extended about 10 or 10½ feet westerly, beyond the westerly side of the depot, and had a railing on the northerly and westerly sides, but was open on the southerly side for the convenience of loading and unloading express bundles and packages into and from the express wagon. There was no direct evidence in regard to whether the defendant owned the land on which this platform stood; but it was testified to, and uncontradicted, that there were steps extending along the westerly side of the depot building; but whether as far westerly as this lower platform, did not appear.

The defendant requested the court to charge that the plaintiff could not recover unless she showed that the place at which she received her injury at the foot and on the southerly side of this lower platform, was on the defendant's premises; and claimed that there was no evidence tending to show that the place of the injury was on the premises of the defendant. The court declined so to instruct the jury, and did not submit to the jury to find whether the place of the injury was on defendant's premises or not; but told the jury that in order to entitle the plaintiff to recover, she must establish that the defendant was guilty of negligence, or was wanting in the exercise of ordinary care and prudence to persons rightfully on the upper platform, in leaving said stairway leading from the upper platform, and where it left the upper platform, open, and without any guard or notice to warn people rightfully on the upper platform, that said stairway and lower platform were not to be used as a way of passage to the street below; and that they must also be satisfied that she was injured by such negligence or want of care and prudence on the part of the defendant, without any neglect or want of ordinary care and prudence on her part, contributing in the least degree thereto; that the plaintiff was rightfully there at the depot, and on the upper platform, if she went either for the purpose of taking the train, or learning

whether she could take a train over the defendant's road, going north that night.

The foregoing instruction was fully and satisfactorily explained to the jury. To the refusal to charge as requested, and to the charge that plaintiff was rightfully upon the upper platform, the defendant excepted.

*W. D. Crane*, for the defendant.

The injury to plaintiff was caused by falling from a platform not upon the premises of the defendant, or under its control. The express company built, maintained, and controlled the platform where plaintiff received her injury. The defendant cannot be held to respond for damages sustained off its premises, and upon premises not under its control. The plaintiff cannot recover damages from defendant for her injuries, without first proving the injuries to have been received upon the premises of the defendant, or premises controlled and used by defendant, and by reason of its negligence. No such proof was made on trial, and hence the defendant was entitled to the charge asked for.

The question as to the plaintiff's right to enter the defendant's depot, and walk upon its platform at the time and under the circumstances of the occasion, is a mixed question of law and fact, and should have been submitted to the jury to find under proper instructions from the court. The court erred in charging the jury that plaintiff was rightfully at the depot, and upon the upper platform, if she went, either for the purpose of taking the train or learning whether she could take a train over defendant's road going north that night. There was no claim made on trial that plaintiff went to defendant's depot that night for the purpose of learning whether she could take a train over defendant's road going north that night.

*E. W. Smith*, for the plaintiff.

Plaintiff's claim for damages is based upon the fact that defendant was bound to keep its depot and its passages and approaches in reasonably safe condition for the use of its passengers,

it being a common carrier of passengers. *McElroy and wife* v. *Nashua & Lowell R. R.* 4 Cush. 591; Redf. Railw. 424 *et seq.* Defendant's responsibility cannot be shifted by saying that the express company used the depot also, as the depot belonged to the defendant. *Murch* v. *Concord R. R.* 9 Foster, 9; *Sawyer* v. *Rutland & Burlington R. R.* 27 Vt. 370, 377; 19 Conn. 507; 30 Eng. L. & Eq. 473.

That the place where plaintiff fell and actually received her injury was not on defendant's premises, does not absolve defendant from liability. It is like the cases where towns have been held liable for injuries occasioned to travelers through the want of proper muniments upon the margins of highways. *Hunt and wife* v. *Pownal,* 9 Vt. 411; *Allen* v. *Hancock,* 16 Vt. 230; *Cassidy* v. *Stockbridge,* 21 Vt. 391.

It cannot be said that plaintiff was not rightfully at defendant's depot. She had a right to go there for the purpose she did.

The opinion of the court was delivered by

BARRETT, J. Access to and exit from the railroad side of the depot by persons taking and leaving the cars at Wells River village, were by means of flights of stairs between the street and that side of the depot. There is no question as to the right of the plaintiff to be at the depot and on the platform, and to leave it and go to the street for the purpose and at the time she was there and did what is stated in the exceptions. Nor is there any question as to the duty of the defendant to do what was reasonably necessary on the depot premises, to ensure safety to the person of the plaintiff in doing what she did, she exercising proper care in that behalf. The head of the northerly stairs opened upon and constituted, at that point, the western margin of the upper platform. That platform and the stairs were on the defendant's depot premises, and were for the use and accommodation of persons who had to do with the trains at that place. In the darkness, and when the stairs within the depot were fastened up, a stranger having occasion to get from the upper platform to the street, would be very likely to regard the stairs at the north end of the depot as designed to furnish a safe way of getting to the street. If not so

designed, and it was unsafe to a stranger for such a purpose, in the darkness, it was the duty of the defendant to forefend against injury, by closing up the head of the stairs, or by notifying in some effectual way against using those stairs for getting to the street. The subject is amply discussed and the law developed in *McDonald and wife* v. *Chicago & North Western Railway*, 26 Iowa, 124, and in the note, 2 Redfield's Railway Cases, 532.

In view of the unquestionable law, the request as to which exception was taken seems frivolous. The open stairs on the margin of the platform led the plaintiff, without fault on her part, to the point of harm. They baited her into the unseen trap—a trap well known to the defendant. They were the alluring and deluding opening to the fatal pit-fall. The fact that the bottom of the pit-fall on which the plaintiff landed and thereby received the hurt, was beyond the line of ownership of the defendant, neither relieves the duty nor mitigates the fault of the defendant. In the "*facilis descensus Averni*" of the ancient bard, the easy descent had quite as much to do with the misfortune of the victim, as the *Avernus* at the bottom. That was well enough, and would have been harmless to the plaintiff, if the easy descent had been properly guarded at the top. The express company were not in privity with the plaintiff in the matter of those stairs, but only with the defendant. That company owed no duty to her in respect to the railroad platform. The duty in that respect rested solely on the defendant. It owned and had exclusive control of the platform and stairs relatively both to the plaintiff and the express company.

As she found herself at the bottom, not in her own right, nor through any fault of hers, but by reason of the faulty negligence of the defendant in leaving the stairway open, it is entirely indifferent, so far as her misfortune is concerned, whether the hurtful place at the bottom was inside or outside the territory of the defendant. On the subject of negligence relatively to both parties, the charge was without fault.

Judgment affirmed.