R. W. DOUGHERTY, Appellant, v. JAMES COX DAVIS, Special Agent of the President, Respondent.

(187 N. W. 616)

**Carriers — owe duty to those coming to meet trains to keep station platform reasonably free from obstacles liable to injure.**

1. A railway company owes a duty, not only to passengers but also to those who come to meet incoming or accompany departing passengers, to keep its station platform reasonably clear and free from obstacles by which such persons are liable to be injured.

**Carriers — bus operator held an invitee on station premises to whom carrier owed reasonable care for his safety.**

2. A person engaged in the business of transporting passengers and baggage between two depots situated upon two different lines of railway in the same village and who has been so engaged for a considerable period of time with the knowledge and acquiescence of the carrier is an invitee upon the station premises and the carrier owes him a duty to use reasonable care for his safety.

**Carriers — implied invitation to bus operator held to extend to waiting room and station platform.**

3. In the instant case it is *held* that the implied invitation extended by the carrier to the person engaged in such transportation business extended not only to the particular premises where his bus was generally placed near the depot platform, but also to the waiting rooms in the depot and to the station platform.

**Negligence — question for jury.**

4. Questions of negligence and proximate cause are generally questions of fact for the jury. They become questions of law only when the

evidence is such that different minds cannot reasonably draw different conclusions either as to the facts or the deductions to be drawn from the facts.

Opinion filed April 1, 1922

From a judgment of the District court of Richland county, *Allen,* J. plaintiff appeals.

Reversed.

*J. A Slattery, W. E. Purcell,* and *W. S. Lauder,* for appellant.

The test as to whether there is an implied invitation is stated by Mr. Campbell in his treatise on negligence in the following language: "The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is a mere pleasure or benefit of the person using it." This language is quoted with approval in Bennett v. Louisville & N. Ry. Co. 102 U. S. 577, 26 L. ed. 235. Cogswell v. Atchison T. & S. F. Ry. Co. (Okla.) 99 Pac. 923; 20 L. R. A. (N. S.) 837; Galloway v. Chicago, Milwaukee & St. Paul Ry. Co. (Minn.) 57 N. W. 1058.

Statutes which simply declare a rule of evidence without creating new rights or taking away vested ones are not within the rule against retrospective operation. Estate of Patterson, 155 Cal. 26, 102 Pac. 941, 26 L. R. A. (N. S.) 654.

When a statute changing a rule of evidence has gone into effect, cases thereafter tried must be governed thereby, unless there be a limitation in the statute although the pleadings were filed before the law went into effect. First Methodist Episcopal Church of Grand Forks v. Fadden, 8 N. D. 162, 77 N. W. 615; Webb v. Den, 17 How. 576; Rich v. Flanders, 39 N. H. 304; D. E. Corda v. City of Galveston, 4 Tex. 470; Randon v. Green, 7 Humph. 130; Shields v. Land Co. (Tenn.) 28 S. W. Rep. 668.

The question whether one injured was on the platform of the railway company by invitation or consent of the company is for the jury. Also the question of dangers existing at a railroad station and whether they were habitual and notorious, and whether the company had knowledge of them, or should have had such knowledge, where the evidence is in dispute, are questions which must be submitted to the jury for their deter-

mination.  Exton v. Central Ry. Co. 63 N. J. L. 356; 56 L. R. C. 508; Denver & Rio Grande Ry. Co. v. Spencer, 51 L. R. A. 121, 27 Colo. 313; 61 Pac. 606; Southern Ry. Co. v. Bates, 194 Ala. 78, L. R. A. 1916A, 510.

*Ed. L. Grantham* and *Young, Conmy & Young*, for respondent.

"Statutes are presumed to operate prospectively only. No part of the Code of Civil Procedure of this state is retroactive unless expressly so declared." Section 7320 C. L. 1913; E. J. Lander & Co. v. Deemy (N. D.) 178 N. W. 922.

Action commenced and answer filed before statute relating to confession on pleading went into effect; trial held subsequently; held statute had no application. Pugh v. Warner, (Tex.) 106 S. W. 698.

Sale under deed of trust, publication of notice under provisions of old code; new code into effect April 1st; sale held April 5th; held valid. New code not retroactive. Fowler v. Lewis, Admr. (W. Va.) 14 S. E. 447; Ranney v. Bostic, 15 Mo. 215; Gumper v. Waterbury Traction Co. (Conn.) 36 Atl. 806.

Act providing for costs as to prosecutors inapplicable to prosecution commenced prior to going into effect of act. State v. Berry, 25 Mo. 355.

Cases tried below prior to new statute of trial de novo on appeal; held statute inapplicable to cases tried below prior to going into effect of the statute. Simonson v. Simonson, 50 Ia. 110; Trebor v. Zwaff, 50 Ia. 180; Joliet I. & S. Co. v. C. C. & W. R. Co., 50 Ia. 455.

"If the injury is not the material and probable consequence of railroad company's negligence, and could not have been foreseen or reasonably anticipated, as the probable result of such negligence, there could be no recovery." 22 R. C. L. 942, § 184.

The question always is: Was there an unbroken connection between the wrongful act and the injury, a continuous operation? * * * It is admitted that the rule is difficult of application, but it is generally held that in order to warrant a finding that negligence, or an act not amounting to wanton wrong, is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the wrongful act, and that it ought to have been foreseen in the light of attending circumstances." Mil. & St. P. Ry. Co. v. Kellogg, 94 U. S. 476; 24 L. ed. 256, cited and followed in; Pielke v. C. M. & St. P. Ry. Co., 5 Dak. 444, 41 N. W. 669, applying the rule to fire cases, but citing au-

thorities applying to other situations; Garraghty v. Hartstein, (N. D.) 143 N. W. 390.

"The law is that if in doing a lawful act, a casualty purely accidental arises, no action will lie for an injury resulting."

"Mischief which could by no reasonable possibility have been foreseen, and which no reasonable person would have anticipated, can not be taken into account as a basis on which to predicate a wrong." Wabash etc. Ry Co. v. Locke, (Ind.) 114 N. E. 391; Judge Cooley in Sjogren v. Hall, 53 Mich. 75, 18 N. W. 812.

"An injury which is not the natural consequence of an act or omission, and that would not have resulted but for the interposition of a new and independent cause, is not actionable." C. B. & Q. v. Richardson, 202 Fed. 836, C. C. A.

"One of the most valuable tests to apply to determine whether a negligent act was the proximate or remote cause of an injury is to determine whether a responsible human agency has intervened sufficient of itself to stand as the cause." 176 Fed. 890, C. C. A., 9th circuit; Seith v. Commonwealth, (Ill.) 89 N. E. 425; Wharton on Negligence, § 134; Tutin v. Hurley, (Mass.) 93 Am. Dec. 154.

"If a person, although on the premises by invitation, deviates from the accustomed way or goes to a place other than such as are covered by the invitation, the owner's duty of care ceases forthwith." 20 R. C. L. 68, § 59.

"Where one enters upon the premises of another with his consent but without an invitation, and not in the discharge of any public or private duty, he is a bare licensee, and the occupier of the premises owes no duty, to him as long as no wanton or willful injury is inflicted upon him by the licenser or his servants." Chesley v. Rocheford & Gould, (Neb.) 96 N. W. 241.

"Where a plaintiff, a stevedore, was injured by falling through an unguarded hatchway on a ship, on a part of the ship where his duties did not require him to be, the defendants were not liable. Plaintiff, while not strictly a trespasser, being a mere licensee at sufferance to whom the defendants at the time owed no duty." Kennedy v. Chase, (Cal.) 3 Am. Neg. Rep. 520.

"Where the owner or occupier of lands, by express invitation, induces a person to make use of a portion of the premises for an express purpose, his liability is confined within the limitation of the invitation

and does not extend to injuries received by the person invited while using the premises for a purpose not expressed and not authorized by the invitation." Ryerson v. Bathgate et al. (N. J.) 11 Am. Neg. Rep. 300; June v. Boston & A. R. Co. (Mass.) 26 N. E. 238.

"When an invitee steps beyond the bounds of his invitation, he becomes, at most, a mere licensee." Menteer v. Scalzo Fruit Co. 240 Mo. 177, 144 S. W. 833, and other cases.

"One who, without being expressly or impliedly invited to enter railroad depot, enters depot for purpose of ascertaining if certain friends of his were therein, is a mere licensee and can not recover from railroad company for injuries from falling down open stairway in baggage office he had entered to ask porter about his friends." C. R. I. & P. Ry. v. Russell (Ark.) 206 S. W. 666.

As to what constitutes a licensee and invitee, see Tex. O. & E. Ry. Co. v. McCarroll (Okla.) 195 Pac. 139.

CHRISTIANSON, J. This is an action to recover damages for personal injuries sustained by the plaintiff at the station of the Chicago, Milwaukee & St. Paul Railway Company in Fairmount, Richland county, in this state. The injuries were sustained on the evening of January 31, 1920, and were occasioned by one of the passenger coaches on a south-bound passenger train operated by the defendant colliding with a sled which was standing on the station platform at Fairmount, causing said sled to be thrown against the plaintiff. The plaintiff, at the time of the injury, was, and for a long time prior thereto had been engaged in the bus, baggage, and transfer business at Fairmount, N. D. And as so engaged he met daily all the passenger trains arriving at and departing from the said Chicago, Milwaukee & St. Paul Railway Company's station at said place. About 9 o'clock on the evening in question, and at a time when a passenger train of the defendant was due and expected to come into said town from the north and stop at the station for the purpose of letting off and taking on passengers and unloading and loading baggage and expressage, the plaintiff was upon said depot platform. There was a sled to which a team of horses were hitched on the platform. This rig had been driven onto the platform by one Schafer, who was then an employee of the American Express Company. Schafer and his said rig were on the platform for the purpose of delivering express matter to or receiving the same from the express and baggage coach of

said passenger train, which train was then expected to arrive, and which collided with said sled. There was also on the sled at the time some baggage which had been taken from the regular baggage truck of the defendant, which baggage it was the duty of the defendant to deliver into the baggage coach of said passenger train. After the accident this baggage was delivered by the railroad employees into said baggage coach from the sled. On the night of the accident there was a snowstorm and there were some snowdrifts on the depot platform. The accident occurred at the north end of the station.

The evidence shows that the railroad track runs north and south, and that the depot is situated on the east side of the track. The depot platform is about 24 feet long. There is a bay window about 15 feet long which projects about 3 feet from the wall. There is a distance of about 13 feet from the bay window to the edge of the platform. There are two waiting rooms. The ladies' waiting room is the northerly room in the depot. The men's waiting room is south of the office, and the freight room is immediately south of that. A few minutes before the train came in, plaintiff drove his bus to its accustomed place, a point about 25 or 30 feet south of the depot. He left his bus and went into the ladies' waiting room. At that time there was no team or sled on the platform. He remained in the waiting room a little while, until he heard the train coming; he then stepped outside the door, and was returning to his bus at the south end of the platform when he was struck by the sled. The railway company furnished its employees at the depot with a truck operated by hand with which to transfer baggage from the baggage room in the depot to the baggage car and from the baggage car back to the baggage room in the depot. When there was snow on the depot platfrom, it was difficult, if not impossible, to operate this truck; and on such occasions Schafer would put the baggage on his sled and transfer it from the baggage room to the baggage car and vice versa. As already stated, on the evening of the accident Schafer had put the baggage on his sled; it was on the sled at the time the accident occurred; and, after the accident, the employees of the defendant took the baggage from the sled and put it into the baggage car. Schafer testified that he merely hauled the baggage for the accommodation of the boys in the depot. He further testified that ordinarily his sled would not be placed where it was that evening, and that the only reason he placed it there was because a man carrying the mail had left his sled and team on the platform so that the passage was obstructed.

At the close of all the evidence the court directed a verdict in favor of the defendant for a dismissal of the action, and plaintiff has appealed from the judgment. The controlling question on this appeal, therefore, is whether the court erred in directing a verdict.

It is contended by the defendant that under the evidence in this case: (1) The plaintiff was a licensee merely, upon the particular portion of the premises where the accident occurred; and "that the defendant owed him no duty except to refrain from wilfully and wantonly injuring him." (2) That the defendant was in no manner liable for the acts of Schafer. (3) That the accident was caused by the action of the mail man, Miller, in stopping his team upon the platform and obstructing Schafer's passage, and that this act was the proximate cause of the injury. (4) That no actionable negligence on the part of the defendant has been established. These contentions will be considered in the order stated:

1. We are unable to agree with the contention advanced that the plaintiff was restricted, and that the implied invitation of the defendant extended only, to the particular portion of the grounds where his bus was situated, and that the plaintiff, at the time and place where he was injured, was a licensee only. The plaintiff was engaged in transporting passengers, and their luggage, to and from the station where the accident occurred. In performing such service he would 'assist passengers with their hand luggage, and in general perform such service as is ordinarily performed by persons engaged in similar service. Not only is the nature of such service generally known, but the evidence in this case shows the kind of service the plaintiff had been performing for passengers which he transported to and from the station. In our opinion the service performed was for the mutual benefit of the carrier and the plaintiff, and the carrier owed the plaintiff the duty of using reasonable care for his safety while he was on the carrier's premises. 4 R. C. L. pp. 1051, 1052, § 502; 22 R. C. L. pp. 919, 920, §§ 165—166; 3 Thompson, Commentaries on the Law of Negligence (2d ed.) §§ 2685, 2686. We are also satisfied that the implied invitation under which plaintiff was acting extended to the place where he sustained his injuries. In other words, we are of the opinion that the plaintiff had a right, as an invitee of the defendant, to be where he was at the time the accident occurred.

(2—4). It is the duty of the railway company to keep its station plat-

form reasonably clear and free from obstacles by which passengers and others invited to transact business are liable to be injured. 4 Elliott on Railroads (2d ed.) § 1590; Mangum v. N. C. R. Co., 145 N. C. 152, 58 S. E. 913, 13 L. R. A. (N. S.) 589, 122 Am. St. Rep. 437. This duty makes it incumbent upon "the management of railroads to see to it that the platforms at the stations are unobstructed by trucks, baggage, or otherwise within a safe distance from the side of a train "coming into or leaving the station." C. & A. R. R. Co. v. Gore, 105 Ill. App. 16; Irvin v. Missouri Pac. R. Co., 81 Kan. 649, 106 Pac. 1063, 26 L. R. A. (N. S.) 739. At the time the accident occurred Schafer was performing certain work which the defendant carrier was required to perform, namely, the handling of baggage. And he was utilizing the sled and team for that purpose. Not only so, but Schafer had, on prior occasions, repeatedly performed this service when weather conditions were the same as they were on the night the accident occurred, and had utilized the same outfit in performing it. And while we deem the question a close one, we are not prepared to say that, as a matter of law, there was no actionable negligence on the part of the defendant. Nor are we prepared. to say, as a matter of law, that some cause other, than the negligence of the defendant's servants was the efficient or proximate cause of the injuries sustained by the plaintiff. See Irvin v. Missouri Pac. Ry. Co., 81 Kan. 649, 106 Pac. 1063, 26 L. R. A. (N. S.) 739; Mangum v. North Carolina R. Co., 145 N. C. 152, 58 S. E. 913, 13 L. R. A. (N. S.) 589, 122 Am. St. Rep. 437.

Ordinarily, the questions of negligence and proximate cause are questions of fact for the jury. 29 Cyc. 627, 639. They become questions of law only when the evidence is such that different minds cannot reasonably draw different conclusions, either as to the facts or the deductions to be drawn from the facts. McGregor v. Great Northern Ry. Co., 31 N. D. 471, 154 N. W. 261, Ann. Cas. 1917E, 141. And, in our opinion, the questions of negligence and proximate cause were, under the evidence in this case, questions of fact for the jury, and the trial court should not have directed a verdict in favor of the defendant.

Reversed and remanded for a new trial.

BRONSON, BIRDZELL, and ROBINSON, JJ., concur.

GRACE, C. J. (concurring specially). I am of the opinion that, under

the evidence, the questions of negligence and proximate cause were questions of fact for the jury, and it was error not to submit those questions to it for determination, instead of directing a verdict in defendant's favor, which the trial court did.